**Tyrone X OSBORN et al.**

v.

**John R. MANSON, Commissioner of Corrections, State of Connecticut, et al.**

**Civ. No. 15755.**

United States District Court,
D. Connecticut.

May 31, 1973.

William H. Clendenen, Jr., David M. Lesser, New Haven, Conn., for plaintiffs.

Stephen J. O'Neill, Asst. Atty. Gen., Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

This is a suit brought pursuant to 42 U.S.C. § 1983 by five prisoners, held for lack of bail in pre-trial detention in the New Haven Correctional Center, challenging the conditions and length of their confinement in administrative segregation. While the plaintiffs' original *pro se* complaint and the subsequent complaint filed by their court-appointed counsel raise several issues, a pre-trial order entered May 24 severed for expedited consideration only the issue of whether their present conditions of confinement constitute cruel and unusual punishment. A hearing to determine the appropriateness of a preliminary injunction was held at the jail on May 25. Testimony was received from the five plaintiffs, two correctional officers, Warden Bruce Goldson and Commissioner of Corrections John Manson. The Court also viewed the cells in which plaintiffs are now confined and those in which they were previously confined.

Plaintiffs subsequently advised that the record on the request for preliminary injunction may serve for decision on the merits of the severed issue. Fed.R.Civ.P. 65(a)(2). Defendants oppose this consolidation, contending that other issues remain for adjudication and that they had only a short time to pre-

pare for the injunction hearing. However, defendants, having had five days to brief the issue, have not alleged any additional facts they wish to prove at a subsequent hearing on the severed issue. In these circumstances, the preliminary injunction record will serve for decision on the merits of the severed issue, with leave to the defendants to move for modification of this Court's decree, upon a claim of additional pertinent factual matters that require consideration. Consolidation seems especially appropriate here in view of the latitude accorded the defendants in implementing this Court's decree.

For some time prior to February 27, 1973, the five plaintiffs were confined to the New Haven Correctional Center for lack of bail, awaiting trial on various charges in unrelated cases. On February 27, plaintiffs were among a larger group of prisoners who escaped from the jail. In the course of the escape a correctional officer was assaulted. While criminal charges of escape and assault upon an officer have not yet been adjudicated in the state courts, the undisputed evidence in this case is sufficient to support a finding, at least for purposes of assessing the State's interest in segregating these plaintiffs from "general population," i. e., other prisoners, that the plaintiffs did escape from lawful custody and that an officer was assaulted in the course of the escape.

Plaintiffs Burgeson, Giorgio, and Osborn were returned to custody on February 27, Evans on March 9, and Andros on March 10. From these dates until April 2 all were segregated from general population in either maximum punitive segregation or punitive segregation or some combination of the two. The details concerning all the conditions and the time periods of such earlier segregated incarceration were not developed at the May 25 hearing because the issue now concerns only plaintiffs' present confinement. But there is no dispute that the confinement prior to April 2, in whatever status, isolated plaintiffs from general population under conditions less satisfactory than their present confinement.

On April 2 plaintiffs were transferred to administrative segregation, the status in which they are presently confined. Each occupies a cell four feet, seven inches wide, eight feet long, and seven feet high. The only item of furniture in the cell is a bed attached to the side of the cell by two chains. The surface of the bed consists of criss-crossed metal slats. There is a thin mattress through which the unevenness of the metal slats can be felt. The cell is lighted by an exposed 40-watt bulb attached to the end wall. With the light on, the effect upon the drab yellow walls of the cell is a mild glare. With the light off, the cell is in near darkness. Wire mesh along the walkway in front of the cells limits light and air from windows located high on the wall beyond the walkway. There is no sink, no toilet, no running water. Toilet facilities in each cell consist of a covered bucket of approximately eighteen inches diameter.

As a general rule, the prisoners are confined to these cells continuously except for two fifteen-minute periods per day, one in the morning or at noon, and the second at 11:30 p. m. During these time periods, the prisoners can walk to the bathroom located two flights below their cells and wash, shave, shower, wash their underwear, and empty and clean their buckets. The fifteen-minute time period begins from the time the cell door is opened and is not generously construed; plaintiff Burgeson emptied and cleaned his bucket during one of the late night fifteen-minute time periods, stepped into the shower, and was told his time was up. While the jail regulations, made known to correctional officers but not prisoners, specify that prisoners in administrative segregation are to be allowed out of their cells on four occasions each day, it is clear that this rule has not been followed. Not only is this established by the credible testimony of the plaintiffs, but a random check

of the log sheets for one of the plaintiffs disclosed that he was out of his cell only twice on the days checked.

Additional time out of the cell can be obtained by reporting for sick call, seeing a visitor on the two visiting days per week, seeing a counsellor three times a week, attending weekly religious services, and, as of the last two weeks, purchasing items from the jail commissary twice a week. Of course, if a prisoner has no visitors, is not sick, has nothing to say to his counsellor, has no money for commissary items, and prefers not to attend religious services, he is limited to the two regular daily time periods outside his cell. If he takes advantage of these extra opportunities, the time he uses competes with time for his personal hygiene. Plaintiff Evans was told on one occasion he could either wash or attend a religious service; on another occasion when he was out for an allotted fifteen-minute visit, a stop at the bathroom used up half of his visiting time.

While confined to their cells, the prisoners are not allowed to use the sink or toilet located in the bathroom two flights beneath their cells. If they need to use their buckets between the two fifteen-minute periods out of their cells, they usually are not permitted to empty the bucket until the next fifteen-minute time period, which may be more then twelve hours later. On some occasions, correctional officers permit a prisoner to empty his bucket more frequently. The impact on personal hygiene and sensibilities remains severe. On occasion, a plaintiff has defecated into his bucket during a morning hour and then been served a noon meal with meat that cannot be cut with the plastic spoon supplied; lacking an opportunity to wash before eating, he tears his meat with his soiled hands, and then eats his meal with the odor of his feces only partially obscured by the covering of the bucket.

The prisoners are permitted to mop and clean their cells once a week. Generally a single pail of water is supplied for this purpose for all the cells on one tier, with the result that the water is dirty by the time the pail reaches the end cells. On the day of the hearing, the cells appeared generally clean. The presence of mice in the cells on some occasions indicates that cleanliness is not always maintained.

Several of the plaintiffs reported that the cumulative effect of prolonged confinement under these conditions caused stress and anxiety. A sixth member of their group was recently transferred from administrative segregation to the security treatment center at Connecticut Valley Hospital, an institution for mentally ill prisoners. Plaintiff Evans has repeatedly asked to see a psychiatrist, and this request has not been granted.

In the last two weeks the plaintiffs have had the opportunity to be in general population for a day on two separate occasions, as part of a program to see how well they are readjusting.

During their confinement in administrative segregation and the previous punitive segregation, plaintiffs were permitted no time for exercise.

Plaintiffs have been confined to administrative segregation under the conditions described for sixty days. Their total time in segregation under these conditions and the worse conditions of their prior confinement has ranged from 83 to 94 days.

There is no formula that will determine whether the conditions and duration of these plaintiffs' confinement violates the Constitution's ban on cruel and unusual punishment. We are admonished to be sensitive to the problems created by judicial interference in the internal discipline of state prisons, yet not to hesitate to intervene in appropriate cases. Wright v. McMann, 387 F.2d 519 (2d Cir. 1967). What does seem clear from the decided cases is that the constitutionality of the conditions of confinement depends both on the details of those conditions and the duration of the confinement. LaReau v. Mac-Dougall, 473 F.2d 974 (2d Cir. 1972); Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971); Wright v. McMann, *supra.*

The conditions of confinement of these plaintiffs is not as adverse as those condemned in *LaReau* and *Wright*; however, the duration of confinement exceeds the five days in *LaReau* and the two confinements of 33 and 21 days in *Wright*.

*Sostre* establishes that isolated confinement does not *per se* violate the Constitution. 442 F.2d at 192. Two factors place the conditions of these plaintiffs' confinement farther down the scale of constitutionality than the conditions tolerated in *Sostre*. First, the cells in *Sostre* had toilets and running water; here there is no running water and only a covered bucket emptied infrequently. Second, the prisoner in *Sostre* was permitted an hour per day of exercise in a courtyard open to the fresh air; these plaintiffs receive no exercise opportunity, other than the walk down and up two flights of stairs twice a day to wash and empty their buckets. *Sostre* emphasized these two factors in concluding that the Constitution was not violated. 442 F.2d at 193. See LaReau v. MacDougall, *supra*, 473 F.2d at 978, n. 7; see also Knuckes v. Prasse, 302 F. Supp. 1036 (E.D.Pa.1969) (toilet in cell and daily exercise time).

How much better are these conditions than those condemned in *LaReau*? The critical facts there were darkness, lack of opportunity to maintain cleanliness, and toilet facilities consisting of a hole in the floor flushed from outside the cell. These plaintiffs were in darkness while confined to punitive segregation; since being in administrative segregation they have had light, but the exposed bulb is surely not satisfactory for the only diversion possible, reading. The opportunity to maintain cleanliness is not as totally lacking as in *LaReau*, since plaintiffs are out of their cells on at least two occasions per day, but the absence of running water and the severe limitation on opportunity to visit a bathroom combine to restrict personal hygiene. As for toilet facilities, my constitutional calipers are not sufficiently refined to distinguish between a hole in the floor, controlled by a flush mechanism outside the cell, and a bucket in the cell that a prisoner cannot empty as required.

In combination, these factors are slightly less adverse than in *LaReau*, but the duration here is at least 83 days compared to 5 days in *LaReau*. Considering the conditions of the plaintiff's present and previous confinement and the length of time they have been required to endure such confinement, I am persuaded that further confinement under present conditions is "so violative of basic concepts of decency," Wright v. McMann, *supra*, 387 F.2d at 526, as to constitute cruel and unusual punishment within the meaning of the Constitution. I do not reach this conclusion without regard for the legitimate concerns of the prison authorities to guard against the possibility of future escape by these plaintiffs. But if secure, isolated confinement is required, it must be provided under conditions that give more humane consideration to the needs of these plaintiffs for physical and mental well-being and personal hygiene. They may be kept in cages, but they are not animals, and even while confined under close security, minimum regard for human decency must be maintained.

In *Sostre* a conclusion that the conditions of confinement threatened the sanity of the prisoners was rejected where the evidence showed that a doctor visited the segregation unit each day. After hearing the testimony of these prisoners and seeing the conditions of their previous and present confinement, and knowing that one prisoner has already required transfer to a mental hospital and the request of another to see a psychiatrist has been ignored, I conclude in this case that continued confinement of these plaintiffs under present conditions poses a serious threat to their sanity.

It is unfortunate to have to declare unconstitutional conditions of prolonged confinement in a state that is endeavoring, under able leadership in the field of corrections, to make rapid improvement

in its prison and jail facilities. Plans are well under way to replace the New Haven Correctional Center. But it will take time to replace this facility and finally retire from service the cells that were scavenged by resourceful Connecticut Yankees after they were determined in the 19th Century to be outdated for use in Sing-Sing prison.

■ The decision of this Court does not mean that these plaintiffs may not be maintained in administrative segregation. But if the defendants wish to continue these plaintiffs in administrative segregation, they must (a) either confine them in cells with toilet facilities and running water,[1] or else permit them to use bathroom facilities at reasonable intervals, and (b) provide them with one hour per day out of their cells for exercise.

Nor does this decision mean that the plaintiffs' current cells and their present conditions of confinement may not be used for other prisoners for brief periods of confinement. Inside plumbing is not a constitutional requirement. But if prisoners are to be confined in cells without running water and toilets, then careful consideration must be given to their opportunity for personal hygiene within their cells, their opportunity to remove urine and feces from their cells, their opportunity to use bathroom facilities outside their cells, the totality of conditions affecting their physical and mental well-being while confined, and the length of time of their confinement. In this case the combined effect of the conditions of confinement, for the length of time these conditions have been endured, exceeds constitutional limits. But it does not follow that administrative segregation under similar conditions is in all instances invalid. In each case the details of the conditions of confinement must be assessed in conjunction with the length of time the confinement has lasted.

■ This combination of pertinent factors makes difficult the framing of injunctive relief for the future. Because correctional authorities bear the primary responsibility for determining the appropriate terms of confinement in administrative segregation, this Court's decree will give them the initial opportunity to prepare ground rules for the conditions of confinement in administrative segregation in the future. They will have twenty days to submit for the Court's approval or modification a plan for administrative segregation, including specification of opportunities for personal hygiene and physical exercise. The plan may include different provisions to apply after different time periods of confinement. The plan should also make appropriate provision for bringing it to the attention of all prisoners placed in administrative segregation. Cf. Sostre v. McGinnis, *supra*, 442 F.2d at 184 (use of "Inmate's Rule Book").

The plaintiffs' request for damages is denied, at least with respect to the severed issue considered at this stage of the litigation.

Accordingly, a decree will enter providing as follows:

1. The defendants, their agents, and employees, and all persons in active concert or participation with them are enjoined from continuing the plaintiffs in administrative segregation unless plaintiffs are (a) either promptly transferred to cells with running water and toilets, or permitted to use bathroom facilities at reasonable intervals, and (b) permitted to exercise outside their cells for one hour per day.

2. The defendants shall submit to the Court within twenty days a plan governing the conditions of confinement in administrative segregation at the New Ha-

---

1. If such cells are available only at the state prison at Somers, any state regulation preventing pre-trial prisoners from being confined at Somers may be displaced, upon application to this Court, for any order necessary to carry into effect this Court's decree. *Cf.* Bridgeport Guardians, Inc. v. Members of the Bridgeport Civil Service Commission, 354 F. Supp. 778, 784, n. 3 (D.Conn.1973).

ven Correctional Center, including opportunities for exercise and personal hygiene.

Jurisdiction will be retained for purposes of reviewing the adequacy of the plan submitted.