**James V. BEL, Jr., et al., Plaintiffs,**

v.

**Frank A. HALL et al., Defendants.**

**Civ. A. No. 73–1654–G.**

United States District Court,
D. Massachusetts.

March 24, 1975.

James M. Pool, Boston, Mass., for plaintiffs.

Dennis LaCroix, Asst. Atty. Gen., Boston, Mass., for defendants.

### MEMORANDUM AND ORDER ADOPTING MASTER'S REPORT

GARRITY, District Judge.

Since the filing of the report of the United States Magistrate sitting as a special master,[1] dated September 17, 1974, the court received objections to the report filed by both parties and a supplemental memorandum on the objections from the special master dated February 21, 1975. At a hearing on the objections, plaintiffs withdrew objections filed on their behalf and counsel for the defendants requested an opportunity to file a further submission in support of the defendants' objections. This was received in the form of a letter from Assistant Attorney General Lacroix dated March 14, 1975. Upon consideration of the special master's reports and defendants' objections and oral argument and memoranda, the court orders, for reasons which follow, that the master's report be adopted and that confinement in the BX Unit of the Massachusetts Correctional Institution at Bridgewater under existing conditions is unconstitutional under the Eighth Amendment, which prohibits cruel and unusual punishment.

The standard for reviewing the master's findings of fact appears in Rule 53(e)(2), Fed.R.Civ.P. They are to be accepted unless clearly erroneous. The master's findings in this case rest not only upon testimony presented to him during an evidentiary hearing which lasted for seven days but also upon three separate visits which he made to the institution. Many of the defendants' objections to the master's findings are irrelevant at this stage of the proceedings because applicable to portions of the master's report in which he found no violations of the plaintiffs' civil rights, e. g., medical treatment. The court understands the desire of the defendants, who are public officials, to enter in the record objections to any criticisms of the institution which they deem to be unwarranted. However, the master's ultimate finding of an Eighth Amendment violation rests entirely upon unsanitary conditions at the institution and inadequate heating. Therefore, as to claims of the plaintiffs on which he found in favor of the defendants a controversy no longer exists in the light of plaintiffs' having withdrawn their objections to the master's report.

Turning to the determinative findings of the master as to sanitation and heat-

---

1. In his 1973 statement on the state of the federal judiciary Chief Justice Burger suggested with respect to civil rights suits brought by state prisoners that federal judges refer them to United States Magistrates sitting as special masters.

ing, some of the master's findings may be incomplete or inaccurate in minor respects, e. g., describing a sink as a "trough" and describing as inoperable shower facilities which, though out of order, could be repaired. However, in all major respects they were supported by evidence and not clearly erroneous. The crucial findings regarding sanitation were the insufficiency of toilets available to inmates in the BX Unit during the daytime and the fact that they were required to use chamber pots while confined to their cells during the nighttime. Regarding heating, the master concluded that the defendants were unable, because of the age and unreliability of the heating system, to provide adequate heat. In this regard the superintendent testified that it was necessary for institutional personnel to continually improvise to keep heating available and that some areas were almost totally without heat for several days; and an ex-inmate testified that there was sometimes no heat in the so-called shanty area.

Since the conclusion of the hearings before the master, the prospects of heating the BX Unit adequately have improved substantially because it is no longer necessary to provide heat to the old state hospital unit and it will not be necessary in the near future to provide heat in the treatment center unit, both of which were heated from the same source as the BX Unit during the period to which the evidence before the master related. Therefore plaintiffs' claims about inadequate heat may be satisfied without further order of the court. But for the sanitation problems, then, there would be no occasion for the court to adopt the master's ultimate conclusion of unconstitutionality and to order that further hearings be conducted toward determining a suitable remedy.

Whether the unsanitary conditions at the BX Unit constitute cruel and unusual punishment is a close question. The standard is well established: basic humanity in the eyes of informed contemporary society. It is an evolving standard, Trop v. Dulles, 1958, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630, and is subjective, Furman v. State of Georgia, 1972, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346, Mr. Justice Marshall concurring at 362, 92 S.Ct. at 2789. In reviewing decisions in analogous cases, certain distinctions should be kept in mind. First, the lack of decent sanitary facilities is unrelated to disciplinary confinement, as in O'Brien v. Moriarty, 1 Cir. 1974, 489 F.2d 941, LaReau v. MacDougall, 2 Cir. 1972, 473 F.2d 974. On the contrary and ironically, only the cells used for disciplinary purposes are equipped with toilets. Next, the plaintiffs are not pretrial detainees, whose confinement may be no harsher or more restrictive than necessary to procure their attendance at trial. Brenneman v. Madigan, N.D.Cal.1972, 343 F.Supp. 128, 135–136, Hamilton v. Love, E.D.Ark. 1971, 328 F.Supp. 1182, 1191.[2] It should also be noted that the defendants did not purposely deprive the inmates of sanitary facilities but rather tried without success to obtain funds with which to correct and improve conditions. On the other hand the personal good faith of the defendants is irrelevant to their obligation to eliminate unconstitutional conditions. Rozecki v. Gaughan, 1 Cir. 1972, 459 F.2d 6, 8.

Factual distinctions from other cases are also pertinent. In LaReau v. MacDougall, *supra*, 473 F.2d at 978, the court emphasized the offensiveness of the use of the "Chinese toilet", which could be flushed only from outside the cell, in a strip cell used to enforce prison discipline. That case, however, con-

2. Inmates of Suffolk County Jail v. Eisenstadt, D.Mass.1973, 360 F.Supp. 676, which held that conditions in the Charles Street Jail in Boston were unconstitutional, was based upon the due process and equal protection clauses of the Fourteenth Amendment. Eighth Amendment considerations were held to be merely confirmatory of conclusions reached under the Fourteenth.

cerned a plaintiff who was confined in it for five days. At the BX Unit inmates must be in their cells only from 10:00 P.M. until 7:15 A.M. (although if they go to their cells voluntarily at 6:30 P.M. or 8:30 P.M. they must remain in them until the following morning). On the other hand the conditions prescribed in cases dealing with punitive segregation, e. g., LaReau v. MacDougall, *supra*, and Sostre v. McGinnis, 2 Cir. 1971, 442 F.2d 178, are by definition of limited and relatively brief duration. This latter distinction is important here. Deprivation of elementary sanitary facilities automatically and without having disobeyed any of the institutional rules is not only hazardous to health but connotes an institutional disdain for the inmates which is bound to have a cumulative effect and to produce in them feelings of depression and despair. These feelings were reflected in the testimony of several inmate witnesses. In addition to the lack of toilets in the cells, the grossly unsanitary conditions involved the emptying of the chamber pots, the shortage[3] and condition of places at which to wash up and toilet facilities elsewhere in the unit, the uncleanliness of the cooking and dining facilities, the disrepair of the shower facilities, and other conditions described in the master's report.

Finally, a finding of such inhumane conditions as to constitute cruel and unusual punishment is as much factual as legal. The special master clearly applied the correct standard under the Eighth Amendment. As stated explicitly in his supplemental memorandum of February 21, 1975, his conclusion was based on what he observed on three inspection tours as well as what he heard in the courtroom. In a case where the ultimate issue is a mixed question of law and fact, and where the correct legal standard was plainly applied, courts should be slow to reject the decision of the trier of the facts. In this case we conclude that the special master's decision was correct. Accordingly we adopt his report and, by agreement of the parties, are entering a separate order remanding the case to the special master for consideration of remedial proposals.

---

3. We do not rely on the rule of United States v. Leahey, 1 Cir. 1970, 434 F.2d 7, to the effect that governmental agencies must abide by procedures adopted by them, as did the master, who found that the conditions did not comply with Article II of the state sanitary code. The *Leahey* and similar cases, we think, apply only to questions of due process.