INMATES OF the SUFFOLK COUNTY
JAIL et al., Plaintiffs, Appellants,

v.

Dennis J. KEARNEY et al.,
Defendants, Appellees.

INMATES OF the SUFFOLK COUNTY
JAIL et al., Plaintiffs, Appellees,

v.

Dennis J. KEARNEY et al.,
Defendants, Appellees,

Boston City Councillors, Defendant,
Appellant.

INMATES OF the SUFFOLK COUNTY
JAIL et al., Plaintiffs, Appellees,

v.

Dennis J. KEARNEY et al.,
Defendants, Appellees,

Appeal of MAYOR OF the CITY
OF BOSTON.

Nos. 77-1361—77-1363.

United States Court of Appeals,
First Circuit.

March 17, 1978.

Max D. Stern, Boston, Mass., with whom Anne B. Goldstein, Stern & Shapiro, and Stanley A. Bass, New York City, were on brief, for Inmates of Suffolk County Jail.

Charles F. Choate, Boston, Mass., with whom Eric W. Wodlinger and Choate, Hall & Stewart, Boston, Mass., were on brief, for Boston City Councillors.

Richard W. Hynes, Asst. Corp. Counsel, Boston, Mass., for City of Boston.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

PER CURIAM.

Plaintiffs in this class action are almost wholly pretrial detainees incarcerated in the Suffolk County Jail in Boston (hereafter Charles St. Jail) who claim that their constitutional rights are violated by the conditions of confinement imposed on them. The district court in an opinion issued June 20, 1973 found that plaintiffs' claims were fully justified. *Inmates of Suffolk County Jail v. Eisenstadt*, 360 F.Supp. 676 (D.Mass. 1973). It ordered immediate correction of several unacceptable conditions at the jail and prohibited the housing of any pretrial detainees at Charles St. Jail after June 30, 1976. The decision of the district court was not appealed. It is the law of this case. *Inmates of Suffolk County Jail v. Eisenstadt*, 494 F.2d 1196 (1st Cir. 1974).

Because the responsible civic authorities were not able to arrange a new replacement facility for pretrial detainees, the district court postponed its order prohibiting the incarceration of detainees at Charles St. Jail until July 1, 1977. Similar difficulties forced another postponement to November 1, 1977. However, along with the second postponement the district court also ordered the renovation of the City Prison facility as an interim place of incarceration to replace Charles St. Jail. This order was appealed

and we granted a stay of the renovation of the City Prison in September, 1977. At that time we noted our extreme reluctance to continue to postpone effective relief for the plaintiff class, but did so to give every possible opportunity to the local authorities to meet their responsibilities to the general public and the constitution without requiring direct orders from this court. We did not stay the November 1 deadline regarding the closing of the Charles St. Jail.

On November 2, 1977, the district court, finding that little progress had been achieved towards an agreement to construct a constitutionally adequate pretrial detention center, ordered the City Council to appropriate funds to establish the Middlesex County Courthouse as such a center. The date for the closing of the Charles St. Jail was postponed until five weeks after the Council had complied with the appropriations order. The Council requested that we stay that order until the appeal could be heard and because of the short time period involved we agreed to another stay.

Oral argument was heard in December. During argument it appeared from the remarks of counsel of the various parties that an agreement might still be reached. Therefore, we extended the stay of the district court's orders until March 3 to permit the parties a final opportunity to take necessary action. We pointed out that such action should include a commitment to adequate funding for the detention center, a plan or design including interim and long range goals as to the conditions of confinement in the new facilities, agreement as to an appropriate site, and target dates for beginning and completing construction.

No agreement was reached. All of the parties to the suit except the Boston City Council filed a joint report in which they indicated (1) that except for the City Council they all agreed that a new jail should be constructed; (2) that except for the City Council all but the Mayor[1] agreed on the conditions of confinement to be imposed on detainees in the new facility; and (3) that the defendants, except for the Boston City Council, had established a process for designing a new facility which would regularly report to and receive comments from plaintiffs.

The Boston City Council passed a resolution on February 15, 1978 indicating that a majority of the Council favored the construction of a new jail facility for between 20 and 30 million dollars, if a site satisfactory to the City Council could be found. On the same day the Council defeated a loan order submitted by the Mayor for $26,700,-000 which did not specify a site for the construction of the new facility. On March 1 the Council appropriated $10 million dollars for the purpose of correcting constitutional deficiencies at Charles St. Jail.

It is now just short of five years since the district court's opinion was issued. For all of that time the plaintiff class has been confined under the conditions repugnant to the constitution. For all of that time defendants have been aware of that fact.

The district court's opinion was not ambiguous. It stated in unmistakable terms its conclusions as to the adequacy of the Charles St. Jail even if renovated. "Both the testimony and our own personal observations lead us to conclude that constitutional requirements cannot be satisfied without construction of a new jail . . . For years, the consensus in this community, from commissions and experts making in-depth studies of the facility to passing citizens struck by its archaic and forbidding exterior, has been to condemn the use of the jail. . . . No one in the entire course of this proceeding has stated a contrary view. In our opinion, no one could. The failure to date to replace the jail is reflective of political inertia. It does not reflect a debate in the community over the need for a replacement facility." *Inmates of the Suffolk County Jail v. Eisenstadt, supra,* 360 F.Supp. at 687.

1. The Mayor did not oppose the positions adopted by the other defendants and plaintiffs as to the appropriate conditions of confinement required. He simply did not take a position on this issue at the time of the filing of the report.

We have not been presented with any basis for concluding that the district court's conclusions are not as true today as they were five years ago. Indeed, the opposite is the case. The Mayor of Boston represents that the plan to renovate the Charles St. Jail is the "worst possible" solution and that funds appropriated by the Council must be increased by at least 50 percent if the jail is to meet acceptable standards. All the other parties to this suit, plaintiffs and defendants, except the Boston City Council, agree that a new jail is necessary and are prepared to work together for its construction. Even the City Council itself, on February 15, 1978, resolved that the city was in need of a "modern correction detention facility" that would meet constitutional standards and that a majority of the Council was in favor of appropriating 20 to 30 million dollars to construct such a facility.

It stretches credulity to assume that in the period between February 15 and March 1, the date of the Council's unexplained vote to appropriate 10 million dollars for the renovation of the Charles St. Jail, superseding information or events convinced the Council that its March 1 action would meet constitutional requirements. We have great difficulty in seeing this vote as anything more than an ostrich-like wish that the necessity to settle on a site and make available adequate funds would disappear.

Given the present state of the record and the unconscionable delay that plaintiffs have already endured in securing their constitutional rights, we have no alternative but to affirm the district court's order to prohibit the incarceration of pretrial detainees at the Charles St. Jail. However, we modify the district court's order as to timing. Unless the defendants meet the terms and conditions set forth herein, the Charles St. Jail will be closed on October 2, 1978 to any inmate awaiting trial.

Were the jail to close without interim arrangements being made available pending a long range solution, the public safety would obviously be threatened. The community would have been badly served by those leaders who, though long ago notified as to what must be done, resolutely refused to take appropriate action. So that there may be no last minute claims of misunderstanding and that the burdens of responsibility be placed squarely where they belong, we state the following:

1. Should the City Council seriously conclude that a 10 million dollar jail renovation program would meet constitutional requirements, as these have been set forth in *Inmates, supra,* at 684–90,[2] it may seek a more precise judicial evaluation of that approach.

2. After five years of procrastination, the Council must be prepared to act expeditiously to secure that review. Such a request for decision, accompanied by a plan detailing how and whether the Charles St. Jail may be brought up to constitutional standards, must be submitted to the district court by May 1, 1978. We strongly urge the district court to conclude its evaluation of any plan submitted by the Council as rapidly as it responsibly can. We would hope an order could be issued by June 1 or at least not later than June 15, 1978.

3. If the district court should determine that the plan successfully meets constitutional requirements, it should postpone the date for closing the jail and direct its attention to providing for an interim detention facility until the renovations can take place. Such an interim facility could include use of the Charles St. Jail.

4. If the plan submitted by the City Council is found to be unacceptable, the order to close the jail will remain in effect. Should the defendants wish to appeal that determination, we would expedite such an appeal. Given a district court order issued between June 1 and June 15, and the

**2.** We refer here to the general standards of evaluation used by the district court. While all of the particular inadequacies noted in the court's original opinion are relevant factors in concluding that the conditions of confinement at the Charles St. Jail were unconstitutional, this should not be taken to imply that other conditions, not directly passed on by the district court, meet constitutional requirements.

prompt filing of a notice of appeal, we do not anticipate any difficulty in completing appellate review of that order (should such review be required) by late July or early August.

5. We have been informed that all the parties to this suit, except for the City Council, are engaged in an ongoing process for designing a new jail facility. There is no reason for this ongoing process to be disrupted. If the renovation of the Charles St. Jail proposed by the City Council is found to be unacceptable, the *only* alternative that would permit us to withdraw the order closing the jail would be the submission of a plan for a new facility including commitments for adequate funding, agreement on a site, projected target dates for the beginning and completion of construction, and an architectural design or written description of the conditions of confinement within the new facility consistent with constitutional standards.

Plaintiffs are entitled to be incarcerated under constitutional conditions of confinement. We are prepared, because of practical exigencies, to allow the plaintiff class to be incarcerated under lower standards for a fixed interim period while an appropriate facility is being readied. However, there is no legal basis for our permitting unconstitutional conditions to continue interminably. We reiterate our commitment to our statement in our Memorandum and Order of December 15, 1977, "[W]e do not see how a court could accept, on this record, an interim solution involving the use of the Middlesex jail facilities, city prison, or the Charles St. Jail, or any combination thereof unless there is a definite commitment to make available sufficient appropriations for a constitutionally adequate facility to be constructed by a definite date in the future." We will not accept the incarceration of pretrial detainees at the Charles St. Jail after October 2, 1978 unless the commitments described in this opinion are carried out. After five years of delay the plaintiff class is entitled to no less.

We understand the purpose of the district court's order regarding the use of the City Prison facility and/or the Middlesex Court-house to be to provide interim facilities in which detainees might be housed while a new jail facility was constructed. Counsel for plaintiffs point to deficiencies at these facilities that may be as serious as or more serious than the inadequacies of the Charles St. Jail. Assuming a proper commitment is made by October 2, to construct a constitutional facility, the district court should reconsider the plans for interim incarceration and determine which of the alternatives, including but not limited to the Charles St. Jail, will come closest to meeting the needs of the inmates and the community during the interim period. Until there are commitments to a constitutional facility, the consideration of interim alternatives is not relevant to our decision. Therefore, we postpone the district court's orders as to the City Prison and the Middlesex Courthouse until such time as a suitable plan for a new jail facility has been approved by the court. At that time if the district court decides to reinstate its orders and the defendants appeal from that decision, we will review those orders as expeditiously as possible.