Matthews *v.* Rakiey.

LLOYD MATTHEWS *vs.* PAUL RAKIEY.[1]

No. 93-P-1150.

Middlesex. December 12, 1994. - May 5, 1995.

Present: ARMSTRONG, SMITH, & GREENBERG, JJ.

*Practice, Civil*, Interlocutory appeal. *Civil Rights*, Immunity of public official. *Public Officer. Imprisonment*, Enforcement of discipline.

In an action brought against a public official for alleged violation of civil rights under State and Federal law, the judge's denial of the defendant's motion for summary judgment based on an assertion of qualified immunity was properly appealable as a final judgment, where the immunity sought under 42 U.S.C. § 1983 was not merely from liability but from suit. [493]

The action of a superintendent of a State correctional facility in making a determination pursuant to an institutional regulation that an inmate posed a security risk that warranted assignment to noncontact visitation was clearly discretionary [493-494], and no constitutionally protected liberty interest in inmate contact visits was created by the noncontact visitation regulation [494-497]: consequently the superintendent was entitled to qualified immunity in an action brought by the inmate for alleged violation of his civil rights [497].

CIVIL ACTION commenced in the Superior Court Department on September 20, 1990.

A motion for qualified immunity was heard by *Katherine Liacos Izzo*, J.

*David J. Rentsch* for the defendant.

*Lloyd Matthews*, pro se.

GREENBERG, J. Lloyd Matthews is a prisoner at the Massachusetts Correctional Institution at Cedar Junction. He brought this action pro se, seeking injunctive relief and dam-

---

[1]The defendant was originally sued both individually and in his former capacity as superintendent of the Massachusetts Correctional Institution at Cedar Junction. The claims against him in his official capacity were previously dismissed and are not before us.

ages for violations of 42 U.S.C. § 1983 (1988), the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H & 11I (the MCRA), and the Fourteenth Amendment to the United States Constitution. At issue is the application of an institutional policy regarding noncontact visitation at Cedar Junction. The policy is recited in an institutional regulation, 103 WAL 483.19, which in pertinent part provides: "Only the Superintendent will be authorized to assign an inmate to [the] non-contact visiting room, based on instances of substantiated security risk. . . . Assignment of an inmate to the non-contact visiting room is *not* to be used as a form of punishment, nor is it to be used as a sanction of the Disciplinary Board."

The plaintiff alleged, alternatively, that the defendant assigned him to noncontact visitation in retaliation for a lawsuit he had previously filed against the defendant and that the regulation was selectively applied by the defendant in violation of the plaintiff's constitutional rights. A judge of the Superior Court concluded that there was nothing in the undisputed facts which supported the claim that the assignment was retaliatory and allowed the defendant's motion for summary judgment on that claim. The selective enforcement claim survived, as the judge ruled that a genuine issue of material fact remained.

After a newly appointed superintendent reinstated the plaintiff's contact visiting privileges, the defendant moved to dismiss the complaint as moot. Another judge of the Superior Court then dismissed all of the remaining claims except the claim for damages against the defendant individually.[2] Finally, the defendant filed a motion asserting that he was entitled to qualified immunity.[3] The defendant appeals from the

---

[2]State officials are liable for damages under § 1983 only if they are sued in their individual or personal capacities. See *O'Malley* v. *Sheriff of Worcester County*, 415 Mass. 132, 141 (1993).

[3]Although it is unclear from the record (the defendant failed to include in the record appendix a copy of the motion the disposition of which he is appealing), we surmise from the motion judge's order and the inclusion of affidavits and exhibits with the "motion for qualified immunity" that it was, essentially, a motion for summary judgment founded upon that the-

denial of that motion,[4] asserting that as a government official he was entitled to qualified immunity from a suit for damages because (1) his actions regarding noncontact visitation are discretionary functions,[5] and (2) the violation of the institutional regulation may not serve as the basis of a damage claim under 42 U.S.C. § 1983, because it created no clearly established right. We agree with the defendant that the judge wrongly denied his motion for qualified immunity.

1. *Background.* In brief outline, the following are the undisputed facts. On September 3, 1989, the plaintiff received visitors in the contact visiting room. During the visit he made two obscene and threatening comments to a correctional officer. Afterwards he refused to submit to a routine postvisit search. He received three disciplinary reports as a result of this behavior, and after a review of these reports and on the recommendation of the deputy superintendent, the defendant assigned the plaintiff to the noncontact visiting room. Subsequently, the disciplinary board found the plaintiff guilty of all charges in the reports and suspended all visiting privileges for forty-five days. This sanction was upheld by the superintendent on October 13, 1989, and the plaintiff's assignment to noncontact visiting was continued for six months. Each time the plaintiff's visiting status came up for review, intervening disciplinary incidents (including assaulting an inmate in another cell) caused the defendant to continue the assignment to the noncontact visiting room. The prohibition contin-

ory. We have reviewed it accordingly. See *Cousineau* v. *Laramee*, 388 Mass. 859, 860 n.2 (1983).

[4]The defendant has not pursued his appeal from the denial of his motion to dismiss the plaintiff's complaint for failure to state a claim for money damages, and we do not address it.

[5]The plaintiff argues that the motion judge never specifically stated that his claim under the MCRA was dismissed at summary judgment. We think that the judge intended to dismiss this claim when she ruled for the defendant on the summary judgment motion. In any event, the plaintiff failed to allege facts that would state a claim under the MCRA, which requires interference with the plaintiff's civil rights by threats, intimidation, or coercion. See *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 719-720 (1989); *Delaney* v. *Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989).

ued until July 23, 1991, when the new superintendent rein-
stated the plaintiff's contact visiting room status.

2. *Qualified immunity.* The defendant argues that his mo-
tion for qualified immunity was erroneously denied and that
this interlocutory appeal is properly before us. We note at
the outset that the judge's order denying the motion for qual-
ified immunity "did not conclude the plaintiff's action at the
trial level, and in that sense it [is] not the sort of final judg-
ment entitled to appellate review." *Breault* v. *Chairman of
the Bd. of Fire Commrs. of Springfield,* 401 Mass. 26, 30
(1987), cert. denied, 485 U.S. 906 (1988). However, the im-
munity created by the United States Supreme Court for ap-
plication to suits brought under § 1983 is an immunity from
suit, not merely from liability. The judge's order denying
qualified immunity, therefore, is a final order under the rule
of present execution, and it is the proper subject of an ap-
peal. See *Breault,* 401 Mass. at 31; *Duarte* v. *Healy,* 405
Mass. 43, 44 n.2 (1989); *Hopper* v. *Callahan,* 408 Mass.
621, 623-624 (1990).

Where public officials are performing a discretionary func-
tion, they may be shielded from civil liability in a § 1983
action by the doctrine of qualified immunity. *Harlow* v. *Fitz-
gerald,* 457 U.S. 800, 818 & n.30 (1982). *Breault,* 401
Mass. at 31-32. See also *Gildea* v. *Ellershaw,* 363 Mass.
800, 820 (1973). An official is entitled to immunity if, at the
time of the performance of the discretionary act, the right
infringed upon was not "clearly established." *Harlow* v. *Fitz-
gerald,* 457 U.S. at 818. *Breault,* 401 Mass. at 32.

(a) *Discretionary function.* That the defendant superinten-
dent's actions were discretionary is plain from the full text of
the regulation set out in the margin.[6] It vests in the superin-
tendent broad discretion to determine when someone is a se-

[6] "483.19 Non-Contact Visiting:"

"1. Only the Superintendent will be authorized to assign an inmate to
[the] non-contact visiting room, based on instances of substantiated secur-
ity risk. The passing of contraband, or the attempt to introduce or pass
contraband, will constitute sufficient cause to assign an inmate to non-con-
tact visiting. Any other incident or action which interferes with the secur-
ity or orderly operation of the institution and which the Superintendent

curity risk for purposes of assigning them to noncontact visitation. There are no criteria listed for the superintendent to use in making the decision to assign an inmate to noncontact visitation. The decision on assignment is left to the superintendent's unfettered discretion.

(b) *Clearly established right.* We must next inquire whether the defendant's conduct nonetheless violated a clearly established right of the plaintiff. The Superior Court judge wrongly used a subjective standard to evaluate the defendant's behavior. The United States Supreme Court in *Harlow* rejected the inquiry into the actor's state of mind in favor of a wholly objective standard[7]; officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald,* 457 U.S. at 817-818. See *Davis* v. *Scherer,* 468 U.S. 183, 191 (1984); *Breault,* 401 Mass. at 32.

The Federal due process clause does not in itself guarantee an inmate a right to unfettered visitation, let alone contact visitation. *Kentucky Dept. of Corrections* v. *Thompson,* 490 U.S. 454, 460 (1989). Moreover, officials sued for constitutional violations do not necessarily lose their qualified immunity merely because their conduct violates some statutory or administrative provision. *Davis* v. *Scherer,* 468 U.S. at 194 & n.12. A State regulation may, however, create an enforceable liberty interest in a prison setting. *Kentucky Dept. of Corrections* v. *Thompson,* 490 U.S. at 461. *O'Malley* v. *Sheriff of Worcester County,* 415 Mass. 132, 142 (1993).

---

determines to be a substantiated security risk may result in an inmate's assignment to the non-contact visiting room.

"2. Assignment of an inmate to the non-contact visiting room is *not* to be used as a form of punishment, nor is it to be used as a sanction of the Disciplinary Board.

"3. Once an inmate has been assigned to the non-contact visiting room, that status may be reviewed (a) at any time after the assignment; (b) at the inmate's request; or (c) at least every six (6) months by the Superintendent."

[7]For the original version of the standard, see *Wood* v. *Strickland,* 420 U.S. 308, 322 (1975).

Thus, the plaintiff urges us to hold that he had a clearly established right to contact visitation because the regulation in question created a constitutionally protected liberty interest.

A regulation creates a constitutionally protected liberty interest when it uses "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed." *Hewitt* v. *Helms*, 459 U.S. 460, 471 (1983). However, the mere fact that a regulation spells out a careful procedural structure does not indicate the existence of a liberty interest. *Id.* at 471. In *Hewitt* the Supreme Court stated that "we are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." *Id.* at 472.[8]

As discussed above, the regulation vests in the superintendent broad discretion to determine when someone is a security risk for purposes of assigning them to noncontact visitation. Nothing in the regulation states that the superintendent "must" or "shall" do anything. The sole limit on the superintendent's discretion is that such assignment is not to be used for punishment. The granting language must use a more definite expression than appears here in order to create a constitutionally protected interest.[9]

---

[8]There has been some disagreement among the Federal circuit courts as to whether the proper formulation of the standard is the one that appears in *Hewitt* v. *Helms, supra,* or in the later case of *Olim* v. *Wakinekona,* 461 U.S. 238 (1983). For a discussion of this problem, see *Brennan* v. *Cunningham,* 813 F.2d 1, 7-8 (1st Cir. 1987). At the heart of the dispute is the question whether mandatory language as described in *Hewitt* is absolutely necessary to create a liberty interest. For our purposes this distinction is not critical, as the language fails to create a liberty interest under either formulation of the test.

[9]Compare other language which was held to create a liberty interest: *Stokes* v. *Fair,* 795 F.2d 235, 237 (1st Cir. 1986) ("the superintendent *shall designate* such person or persons as he deems appropriate to review the status of inmates housed in detention in awaiting action on a weekly basis. An inmate *shall be released* from detention when . . ." [emphasis added]); *Maldonado Santiago* v. *Velazquez Garcia,* 821 F.2d 822, 827 (1st Cir. 1987) (a temporary isolation or transfer " '*will never* last for more than the time required' to resolve an emergency, and that '[a]n Administrative hearing *will* be held . . . within seven working days immediately thereafter' " [emphasis in original]).

The United States Supreme Court has repeatedly asserted the paramount need for prison officials to maintain security in their institutions. "[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." *Rhodes* v. *Chapman,* 452 U.S. 337, 349 n.14 (1981). "In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than the specific facts surrounding a particular incident . . . . The judgment of prison officials in this context, like that of those making parole decisions, turns largely on 'purely subjective evaluations and on predictions of future behavior.' " *Hewitt* v. *Helms,* 459 U.S. at 474, quoting from *Connecticut Bd. of Pardons* v. *Dumschat,* 452 U.S. 458, 464 (1981). The *Hewitt* Court also warned that caution should be exercised in transposing the reasoning from other cases in which regulations have been interpreted to create a liberty interest[10] to a situation where the regulations in question govern the day-to-day administration of the prison system. *Id.* at 470. This "hands off" doctrine is a product of judicial deference to administrative expertise where the court's lack of expertise in penology could exacerbate disciplinary problems. See *McCloskey* v. *Maryland,* 337 F.2d 72, 74 (4th Cir. 1964); *Haines* v. *Kerner,* 427 F.2d 71, 72-73 (7th Cir. 1970). See Hirschkop, The Rights of Prisoners, in The Rights of Americans 455 (Dorsen ed. 1971). In short, neither the language of the regulation nor the considerations dis-

---

Note, however, that language of a mandatory character does not always create a liberty interest. *Bowser* v. *Vose,* 968 F.2d 105, 108 (1st Cir. 1992) (interpreting a regulation that provided: "a resident who satisfies one of the [six enumerated] purposes . . . shall be eligible for a furlough," the court held, "[a]bsent from the regulations . . . is any mandatory language directing that a furlough *must* be granted to any inmate who satisfies the eligibility requirements" [emphasis in original]).

[10]See *Wolff* v. *McDonnell,* 418 U.S. 539 (1974), which dealt with good-time credits; *Greenholtz* v. *Nebraska Penal Inmates,* 442 U.S. 1 (1979), which dealt with parole; and *Vitek* v. *Jones,* 445 U.S. 480 (1980), which dealt with the transfer of a prisoner to a mental institution. All of these cases dealt with situations that radically transformed the length and nature of the custody to which the inmate was subject. See *Hewitt* v. *Helms,* 459 U.S. at 469-470.

cussed above support the conclusion that a liberty interest was created by the noncontact visitation regulation.

*Conclusion.* Since the defendant's actions were discretionary and they did not violate any clearly established rights of the plaintiff, qualified immunity was warranted. The order denying the defendant's motion for qualified immunity is reversed, and judgment shall be entered dismissing the complaint.[11]

*So ordered.*

---

[11]Other issues raised by the plaintiff are not properly before us.