Fremont-Smith, J.
INTRODUCTION
This case is before the Court on the defendants’, various former officials of the Department of Correction (DOC), motion for summary judgment in this class action suit challenging the conditions of confinement at the Southeastern Correctional Center (SECC). For the following reasons, the defendants’ motion is ALLOWED in part and DENIED in part.
BACKGROUND
Plaintiffs’ complaint challenges the constitutionality of the toilet facilities within inmates’ cells at SECC as they existed prior to the completion of renovations in 1996.
Although regulations promulgated by the Department of Public Health (DPH) require that every cell have a working flush toilet and hand-washing sink with hot and cold running water, prior to 1996, such amenities did not exist at SECC. Instead, a portable toilet called a “Pak-A-Potti” was present within each inmates’ cell. During the time that inmates were locked in their cells, these portable toilets were the only facilities available. In affidavits, inmates aver that on occasion, in certain units, they were locked in their cells up to twenty-three hours each day and were also forced to take meals in their cells. Inmates were also not able to wash their hands after using the toilets because the cells did not have running water.
The portable toilets, described in detail in the Lang-ton decision, essentially consisted of top and bottom halves. The bottom half functioned as a waste receptacle and contained chemicals designed to dissolve waste and mask odors. The containers of these chemicals warn of toxicity and state that the chemicals should not be inhaled or come into contact with skin or eyes. Inmates, in numerous affidavits, alleged that they suffered skin rashes, eye irritations, breathing difficulties and headaches from use of the chemicals. The inmates also averred that the toilets were frequently cracked, stained, and leaked, thus causing waste and chemicals to spill onto the floor of the cells, which attracted roaches and rodents. The toilets allegedly emitted unbearable odors so strong as to cause the inmates to become physically ill.
Each morning, the inmates lined up to empty the waste receptacle portion of their toilets into “slop sinks” located in each unit’s common bathroom. The inmates alleged that the drains in these sinks would frequently back up, and that hot water and cleansers were not always available, rendering it impossible to adequately clean the toilets. Waste materials allegedly *519 splashed on themselves and on other inmates using separate sinks to brush their teeth. Human waste covered the floor. One inmate claimed that waste from the floor above leaked through the ceiling and fell on his arm while he was emptying his own toilet. He suffered an allergic reaction for which he was treated in the health services unit. Several inmates also stated that upon transfer to a new cell, they had to clean a toilet filled with another inmate’s waste.
Plaintiffs averred that the defendants ignored their numerous complaints. For example, one inmate stated that after complaining about his broken toilet, a correctional officer laughed, and it was not replaced for over one month.
PROCEDURAL HISTORY
This case presents a somewhat complicated procedural history which must be fully explicated before discussion of the various legal issues. At the outset, it should be noted that the toilet facilities at the heart of this matter have been the subject of nearly identical litigation in state and federal courts,[3] and at one point in 1995, the present matter was consolidated with a similar case, Langton v. Fair, for purposes of appellate review of this Court’s denial of plaintiffs’ motion for a preliminary injunction.
I. The Langton Case
In 1986, inmate William Langton filed suit against various DOC officials in Plymouth County charging that the toilet facilities at SECC violated his state and federal constitutional rights.[4] He sought declaratory and injunctive relief and monetary damages. His challenges were substantially similar to the plaintiffs’.
In March 1991, Langton’s case was consolidated with four other civil actions,[5] all challenging the toilet facilities at SECC. Judge Charles Hely conducted a five-day, jury-waived trial in March 1991 which included two views of the SECC facilities SECC on March 12 and 14.
On May 16, 1991, Judge Hely issued an extensive Memorandum of Decision in which described the sanitary and functioning condition of the toilet facilities and held that the conditions at SECC did not constitute cruel and unusual punishment. He further held that the defendants were entitled to qualified immunity. However, as a further assurance to the Court, on May 20, 1991, Judge Hely issued an order requiring the defendants to maintain the same high standards of cleanliness and maintenance of the toilet facilities as observed on March 12 and 14. Two of the ten plaintiffs appealed Judge Hely’s decision.
II. The Ahearn Case
The present class action suit was filed in 1990, four years after Langton, and challenges the same facilities. In their complaint, the plaintiffs allege that the toilet facilities at SECC violate art. 26 of the Massachusetts Declaration of Rights, the Eighth and Fourteenth Amendments to the United States Constitution, General Laws c. 111, §21, c. 127, §32 and 105 Code Mass. Regs. §451.113. The plaintiffs seek redress under 42 U.S.C. §1983 and General Laws c. 12, §111.
On November 8, 1993, the plaintiffs filed a motion for summary judgment, or in the alternative, a motion for a preliminary injunction. This motion was denied by the Court, Spurlock, J., on January 6, 1994. On July 26, 1994, the plaintiffs appealed only the denial of injunctive relief.
III.The Consolidated Appeal
On October 5, 1994, the Appeals Court consolidated the Ahearn and Langton appeals, and heard arguments on November 11, 1994. On July 10, 1995, the Appeals Court issued an order in the Ahearn case and an unpublished memorandum of order in the Langton case.
In the Ahearn order, the Appeals Court approved an agreement by the parties scheduling construction of new toilet facilities at SECC, and appointed Justice Mel Greenberg to monitor progress of the renovation. The Appeals Court retained jurisdiction until completion of the remodeling in November 1996, and then dismissed the interlocutory appeal.
In the Langton memorandum, the Appeals Court noted that the agreement reached in Ahearn rendered moot the issue of injunctive relief. With regard to the issue of damages, the court affirmed Judge Hely’s determination that the defendants were entitled to qualified immunity.
IV.The Present Case
As the renovation of the facilities at SECC has rendered moot the issue of injunctive relief, the only questions remaining are whether the conditions at SECC violated the provisions alleged by the plaintiffs, whether the defendants are entitled to qualified immunity, and the amount of damages, if any, incurred by the plaintiffs. The defendants, relying heavily on Judge Hely’s decision in Langton, contend that they are entitled to qualified immunity so that summary judgment is appropriately entered in their favor. Plaintiffs counter that the grant of qualified immunity found in Langton has no bearing in this case, and that a genuine dispute of material fact remains as to whether the conditions at SECC violated the plaintiffs’ constitutional rights. For the following reasons, the defendants’ motion for summary judgment is ALLOWED in part and DENIED in part.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Massachusetts Bay Transp. Auth. v. Allianz Ins. Corp., 413 Mass. 473, 476 (1992). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson *520 v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id.; HRPT v. MacDonald, 43 Mass.App.Ct. 613, 621 (1997).
In deciding a motion for summary judgment, the Court may consider pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The Court should not weigh evidence, assess credibility or find facts. See Kelley v. Rossi, 395 Mass. 659, 663 (1985). The Court may only consider undisputed material facts and apply the law to them. See id.
Summary judgment may be entered as to certain issues and not others. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Claims may also be dismissed on a motion for summary judgment if the “complaint sets out a detailed statement of the facts on which the plaintiff relies, and those facts do not support any claim entitling the plaintiff to relief.” Smith v. Comm’r of Mental Retardation, 409 Mass. 545, 547 (1991).
I. 42 U.S.C. §1983
The plaintiffs seek relief under 42 U.S.C. §1983[6] for the allegedly inhumane conditions maintained by the defendants and the defendants’ failure to provide flush toilets and running water in each cell. Although prisoners do not “shed all constitutional rights at the prison gate," see Sandin v. Conner, 515 U.S. 472, 485 (1995), prisoners are only accorded those rights “not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration.” See Hudson v. Palmer, 468 U.S. 522, 523 (1983). To succeed on a claim under §1983, the plaintiffs must prove that (1) the defendants acted under color of law and (2) the defendants deprived the plaintiffs of rights, privileges or immunities secured by the Constitution or laws of the United States. Langton v. Sec’y of Pub. Safety, 57 Mass.App.Ct. 15, 19 (1994); Parratt v. Taylor, 451 U.S. 526, 535 (1981), overruled in part by Daniels v. Williams, 474 U.S. 327, 328 (1986). §1983 should be “liberally and beneficently construed . . . [and] be broadly construed against all forms of official violation of federally protected rights ...” Langton, supra, at 19, quoting Monell v. New York City Dep’t of Soc. Serv., 436 U.S. 658, 684, 700-01 (1978).
The defendants may only properly be held liable in so far as the plaintiff proves that the defendants were personally involved in depriving the plaintiffs of their constitutional rights.[7] See Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581-582 (1st Cir. 1994). This personal involvement requirement may be satisfied by proof that the defendants were deliberately indifferent to the plaintiffs’ deprivation. See Voutour v. Vitale, 761 F.2d 812, 820 (1st Cir. 1985), cert. denied, sub nom. Saugus v. Voutour, 474 U.S. 100 (1986); id.
The Eighth Amendment “draws its meaning from the evolving standards of decency that mark the progress of a maturing society.” See Michaud v. Sheriff of Essex County, 390 Mass. 523, 527 (1983), quoting Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981). Measured against this standard, the failure to provide inmates with a toilet that can be flushed from within a cell has been held to constitute cruel and unusual punishment in violation of the Eighth Amendment. See id. at 524, 529 (cases “evidence an intolerance for confinement which requires persons to live in close proximity to their own human waste and that of others); Strachan v. Ashe, 548 F.Supp. 1193, 1202 (D.Mass. 1982), quoting Lareau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972), cert. denied, 414 U.S. 878 (1973) (“causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted”). Interior plumbing is the ’’norm of American life, even in prisons, and privacy in personal hygiene is generally equated with minimum human dignity." Michaud, supra, at 529.
The materials submitted by plaintiffs evidence a genuine dispute of material fact as to whether the conditions at SECC violated their constitutional rights. The degrading conditions described by the plaintiffs are substantially similar to conditions found unconstitutional in Michaud. See id. Moreover, precisely the same conditions at SECC were found unconstitutional in Masonoff v. DuBois.[8] See 899 F.Supp. 782, 797 (D.Mass. 1995). Such a finding, while not controlling, is highly persuasive in determining whether there is a question of material fact in the present case. Moreover, the defendants have submitted no affidavits or any other Rule 56 materials denying the plaintiffs’ allegations. The defendants rely solely on Langton’s finding of qualified immunity as support for their motion for summary judgment; however, as discussed below, Langton has no bearing on the present case.
A. Langton
Langton has no preclusive effect on the plaintiffs because they were not parties, nor were they in privy with the parties, in Langton. See Masonoff, supra, at 786-87. Massachusetts does not “permit a defendant to bind a plaintiff by the defendant’s previous victory in another case presenting the same issue.” Id., quoting Lynch v. Merrell-National Labs., 830 F.2d 1190, 1192 (1st Cir. 1987). To bind the plaintiffs with Langton’s findings would violate their due process rights. See id., citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 4 (1979).
Moreover, Judge Hely’s findings in Langton, based on two views in March, 1991, do not preclude the possibility that the horrific conditions alleged by plaintiffs existed at other times or in other units at SECC. For example, Judge Hely found that the plaintiffs in Langton were not confined to their cells for more than *521 ten hours per day and were never forced to eat in their cells. In the present case, several inmates averred that they were locked in their cells for up to twenty-three hours per day and had to eat in their cells. In sum, the present case concerns different plaintiffs who quite possibly could have been subjected to unconstitutional conditions at SECC.
B. Qualified Immunity
Public officials are entitled to immunity from suit under §1983 if, in performing a discretionary act, they infringe upon a right not “clearly established.” See Matthews v. Rakiey, 38 Mass.App.Ct. 490, 493 (1995). A “clearly established” right is one of which a reasonable person would have been aware of at the time. Caron v. Silvia, 32 Mass.App.Ct. 271, 273 (1992). “It is enough . . . that there existed caselaw sufficient to establish that, if a court were presented with such a situation, the court would find that the plaintiffs rights were violated.” Id., quoting Hall v. Ochs, 817 F.2d 920, 925 (1st Cir. 1987). If plaintiffs prove at trial that the toilet facilities which these particular plaintiffs (as distinguished from those in Langton) were required to use at SECC were so bestial as to violate their constitutional rights, the defendants will not be entitled to the defense of qualified immunity because, as discussed below, state regulations removed any discretion and because the plaintiffs’ right to hygienic means of waste disposal was clearly established.[9]
1.Discretionary Function
First, the scope of discretion granted to prison officials in the area of toilet facilities is severely circumscribed because regulations mandate that each cell have a working toilet and running hot and cold water.[10] See 105 Code Mass. Regs. §451.113. Furthermore, it should be noted that the defendants cannot shield themselves from liability with the argument that the State failed to appropriate funds for remodeling. See Michaud, supra, at 532 (“We flatly reject the notion that an arm of the State may be allowed to violate an individual’s constitutional rights because funds have not been appropriated to remedy the wrong”).
2. Clearly Established Right
The defendants are also not entitled to qualified immunity because, if the repulsive conditions alleged are proven true, the defendants reasonably should have known that their failure to take corrective action would result in a violation of the plaintiffs’ constitutional rights. See Matthews, supra, at 494; Strachan, supra, at 1205, quoting Procunier v. Navarette, 434 U.S. 555, 562 (1978). An inmate’s “constitutional right to adequate and hygienic means to dispose of his bodily wastes was clearly established” at the times the conditions complained of by plaintiffs existed. See Michaud, supra, at 533; Strachan, supra, at 1205. The regulations requiring working toilets were promulgated in 1979, and cases established minimum standards in the early 1980s. Defendants cannot claim that, measured objectively, they could not have known that the inhumane conditions as alleged violated constitutional standards.
II.The Massachusetts Civil Rights Act (MCRA), G.L.c. 12, §111
Threats, intimidation and coercion are essential elements of a claim under the MCRA. See Layne v. Superintendent, Mass. Correctional Inst., Cedar Junction, 406 Mass. 156, 158 (1989). A direct violation of rights unaccompanied by an actual threat of harm, coercion or intimidation does not implicate the MCRA. See Longval v. Comm’r of Correction, 404 Mass. 325, 333 (1989); Layne, supra at 158. Acts that do not seek to coerce a person to do or not to do something do not constitute threats, intimidation or coercion.[11] See Pheasant Ridge, Assoc. Ltd. Partnership v. Burlington, 399 Mass. 771, 781 (1987). Without an invidious motive, a direct deprivation of rights is not actionable under the MCRA. See Longval, supra at 334.
In their complaint, the plaintiffs fail to assert any facts demonstrating threats, intimidation or coercion by officials or employees of the DOC. Furthermore, the summary judgment record evinces no such facts. Without an allegation of such facts, and without any supporting factual basis in the record, summary judgment is appropriately granted to the defendants on this claim. See Smith, supra, at 547.
III.G.L.c. 127, §32
Summary judgment in favor of the defendants is also appropriately granted on plaintiffs’ claim under G.L.c. 127, §32 as plaintiffs failed to assert any facts giving rise to a cause of action under this provision. The purpose of G.L.c. 127, §32 is to assure equal treatment among prisoners who are not being disciplined. See Blaney v. Comm’r of Correction, 374 Mass. 337, 341 (1978) (inmates held in protective custody entitled to same privileges as general inmate population). Plaintiffs’ complaint and the record simply contain no facts demonstrating that the defendants accorded them disparate treatment.
IV.Failure to Enforce Regulations, G.L.c. Ill, §21
Plaintiffs also seek relief under G.L.c. Ill, §21 for the defendants’ failure to comply with 105 Code Mass. Regs. §451.113, which requires a working toilet and running water in eveiy cell. However, this statute does not provide for a private cause of action for monetary damages. See Attorney Gen. v. Sheriff of Worcester County, 382 Mass. 57, 58-59 (1980) (attorney general utilizes statute to force officials to comply with regulations). As injunctive relief is no longer necessary, and §1983 provides for monetary damages, summary judgment on this claim is appropriately granted in favor of defendants.
ORDER
It is hereby ORDERED that the defendants’ motion for summary judgment is DENIED with regard to *522 plaintiffs’ claims under 42 U.S.C. §1983, and ALLOWED as to all other claims.

Langton v. Fair, Civil No. 86-24234 (Plymouth Super. Ct. May 16, 1991); Masonoff v. DuBois, 899 F.Supp. 782 (D.Mass. 1995).

Langton also challenged other conditions of his confinement which are not pertinent to the present case.

Smith v. Johnston, Civil No. 88-4477 (Suffolk Super. Ct.); Rockwell v. Vose, Civil No. 90-4420 (Suffolk Super. Ct); Khaliq v. Fair, Civil No. 86-24841 (Plymouth Super. Ct.); Belbin v. Vose, Civil No. 89-2246A (Plymouth Super. Ct.).

 42 U.S.C. §1983 provides, in relevant part, “(e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen ... to the deprivations of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the parties injured.”

Under §1983, public officials cannot be held liable on either a respondeat superior theory, seeMonell, supra, at 694, or negligence theory, see Daniels, supra, at 328.

The Masonqff court found the plaintiffs’ description of conditions at SECC comparable to Dante’s “gloomy second river of hell, the Styx.” See Masonoff, supra, at 797.

Plaintiffs would need to prove, however, that the conditions they encountered were materially worse than those described by Judge Hely in his “Memorandum of Decision” in Langton, pp. 13-16.

These regulations can be contrasted with those at issue in Matthews, which concerned internal security, an area traditionally left to prison officials’ discretion. See Matthews, supra at 493-94.

A threat involves the intentional exertion of pressure to make another fearful of injury or harm. See Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474, cert. denied, 513 U.S. 868 (1994). Intimidation involves putting in fear for the purpose of compelling or deterring conduct. Id. Coercion is the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done. Id.