Troy, J.
INTRODUCTION
Plaintiff s complaint for declaratoiy and injunctive relief arises from medical treatment provided by defendant Department of Correction (DOC) and defendant Correctional Medical Services (CMS) to plaintiff James Megna (“plaintiff’ or “Megna”). Plaintiffs action, brought pursuant to 42 U.S.C. §§1983 and 1988, the Eighth Amendment to the United States Constitution and Article 26 of the Massachusetts Declaration of Rights, arises from the DOC’s alleged refusal to provide acceptable medical treatment for Plaintiffs advanced periodontal disease. Plaintiff now asks this court for an emergency temporary order,'which the court will treat as a motion for a preliminary injunction, requiring the DOC to allow plaintiff to seek outside treatment at his own expense for his periodontal disease.
BACKGROUND
Plaintiff is a prisoner confined to the care and custody of Defendant DOC at MCI Shirley in medium security. Defendant CMS contracted with the DOC to provide medical treatment and services to state prisoners.
Plaintiff has been under the care of the DOC and CMS since his incarceration in 1991. Plaintiffs dental record indicates that he either received treatment or had an appointment for treatment several times between April of 1993 and January of 2002. His dental record indicates the following appointments:
1. On April 28, 1993, plaintiff received an initial dental examination including teeth charting and oral hygiene instruction.
2. On May 31, 1995, plaintiff received another examination. The examining dentist charted, scaled, and polished plaintiffs teeth. The dentist concluded that plaintiff had fair hygiene but had heavy stains on his teeth, moderate recession and bone loss, and slightly puffy tissues with light bleeding. The dentist noted that plaintiff requested not to be rescheduled for one year.
3. On April 12, 1996, plaintiff refused and rescheduled treatment.
4. On May 8, 1996, plaintiff refused and rescheduled treatment: requesting a one year recall.
5. On July 27, 1998, plaintiff failed to show for a scheduled appointment.
6. On October 13, 1998, plaintiff did not show for a sick call.
7. On October 30, 1998, plaintiff was treated. The examining dentist noted that plaintiffs number 18 tooth filling came out and that he had advanced periodontal disease, mobility of tooth numbers 23, 24, and 26, and a lot of calculus. Plaintiff received a temporary filling for tooth number 18 and planned a future visit for a cleaning and filling of the same tooth.
8. On March 3, 1999, plaintiff received a cleaning.
9. On June 30, 1999, plaintiff received an adjusted occlusion.
10. On January 17, 2001, plaintiff made a consultation appointment.
*60 11. On February 13, 2001, plaintiff was treated. He received scaling and was diagnosed with severe periodontal disease, much tarter, and poor hygiene.
12. On March 8, 2001, plaintiff cancelled his dental cleaning until further notice and signed a release of responsibility.
13. On March 9, 2001, plaintiff refused a cleaning and asked to reschedule his next visit.
14. On January 8, 2002, plaintiff was treated. He was diagnosed with chronic gingivitis, teeth free-able, and moderate to severe periodontal disease. The examining dentist recommended that plaintiff receive dentures.
15. On January 12, 2002, Plaintiff cancelled an appointment scheduled for January 14, 2002. plaintiff did not reschedule the appointment.
Plaintiff asserts that the DOC has not provided the proper treatment, a gingivectomy, for his condition. The DOC asserts that the DOC guidelines, specifically 630.12, do not cover plaintiffs gingivectomy. Instead, the DOC offered to extract plaintiffs infected teeth and provide him with dentures. Despite this offer, plaintiff asked for an independent review of his condition, offering to pay the costs of the evaluation.[2] The DOC declined the plaintiffs request and the action ensued. Before bringing his suit, plaintiff did not file a grievance pursuant to 103 C.M.R. 491.00 et seq.
STANDARD
When asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party’s claim of injury and chance of success on the merits. Ashford v. MBTA, 421 Mass. 563, 564 n.3 (1995); Planned Parenthood League of Mass., Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). If the judge is convinced that the moving party has met its burden of demonstrating that the failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. Id. What matters as to each party is not the amount of irreparable harm the party might conceivably suffer, but rather, the risk of such harm in light of the party’s chance of success on the merits. Id. Only when the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue. Id. Additionally, in appropriate cases, the court should also consider the risk of harm to the public interest. GTE Products Corp. v. Stewart, 414 Mass. 721, 723 (1993).
DISCUSSION
I. Likelihood of Success on the Merits A. Plaintiffs Section 1983 Claim
Plaintiff brought this action pursuant to 42 U.S.C. §§1983. The claim is governed by the Prisoner Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a), enacted by Congress in 1995. The PLRA states in relevant part: “No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted. Porter v. Nussle, 122 S.Ct. 983, 988 (2002). In Porter, the Court held that the PLRA exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Id. at 992. The exhaustion requirement is a prerequisite to suit even when a prisoner seeks relief not available in grievance proceedings. Id. at 988.
Plaintiff, relying on Nussle, argues that it need not comply with the exhaustion requirements of the PLRA because the PLRA does not apply to actions filed in state courts. Given this interpretation, plaintiff contends that Nussle overruled lower court decisions such as Martin v. Ohio Dep’t of Rehab. & Corr., 749 N.E.2d 787, 790 (Ohio Ct.App. 2001), which held that the PLRA applied to a § 1983 claim whether it was brought in state or federal court. The defendants, on the other hand, argue that plaintiffs interpretation of Nussle is incorrect. In making this argument, the defendants refer to the express language of Nussle, applying the PLRA to all inmate suits about prison life. Nussle, 122 S.Ct. at 988. The defendants contend that given this language, lower court decisions such as Martin, applying the PLRA whether an action is brought in state or federal court, are still good law. 749 N.E.2d at 790.
The court finds that the exhaustion requirement of the PLRA applies to plaintiffs §1983 action even though plaintiff filed the action in state court. In making this finding, the court relies on the PLRA’s express language that: “exhaustion is now required for all actions brought with respect to prison conditions whether under §1983 or any other federal law.” Nussle, 122 S.Ct. at 988 (emphasis added). The court further concludes that Nussle, does not overrule lower court decisions applying the PLRA to actions brought in both state and federal courts. Martin, 749 N.E.2d at 790.
Accordingly, for plaintiff to succeed on the merits of his claim he must show that he exhausted his administrative remedies. Pursuant to Chapter 491.00, titled “Inmate Grievances,” plaintiff should have filed an internal grievance before bringing the Superior Court action. Given that plaintiff did not file such a grievance, he cannot show a likelihood of succeeding on the merits of his §1983 claim.
B. Plaintiffs Action Under Article 26 of the Massachusetts Declaration of Rights
Plaintiff contends that even if exhaustion applies to his §1983 claim, he can still state a cause of action under Article 26 of the Massachusetts Declaration of Rights. However, plaintiffs designated §1983 asserted cause of action does not provide a vehicle to assert a *61 state constitutional right. Phillips v. Youth Development Program, 390 Mass. 652, 658 n.4 (1983). As such, plaintiff relies on the premise that the Supreme Judicial Court implicitly recognized an Article 26 cause of action in Layne v. Superintendent, Mass. Corr. Inst., Cedar Junction, 406 Mass. 156, 159-60 (1989). In Layne, the Supreme Judicial Court stated that “a State may not violate a person’s constitutional rights and then fairly assert that no redress can be had because the State has not provided a statutory means of enforcing those rights.” Id.
However, in the instant case, the State did provide a vehicle, 103 C.M.R. 491.00 et seq., which establishes a grievance procedure for inmates. Chapter 491.00, promulgated by G.L.c. 124, §l(j) and (q) and G.L.c. 127, §38E, is titled “Inmate Grievances.” Specifically, Chapter 491.01 states: “the purpose of 103 C.M.R. 491.00 is to establish rules and procedures governing the filing and resolution of grievances by inmates.” As such, given that the State established a statutory means for plaintiff to assert his rights, he cannot show a likelihood of succeeding on an implied cause of action under Article 26. Layne, 406 Mass. at 159-60.
Assuming arguendo that plaintiff could assert an implied cause of action, he must demonstrate a likelihood of success on the merits to obtain injunctive relief. To succeed in this action, plaintiff must show that defendant violated the principles of Article 26. Michaud v. Sheriff of Essex County, 390 Mass. 523, 534 (1983) (holding that a prisoner’s rights under Article 26 are at least as broad as under the Eighth Amendment). Plaintiff must also comply with G.L.c. 127, §38F,[3] the Massachusetts Prisoner Litigation Act. Under this statute, to show a likelihood of success on the merits, plaintiff must show that he was not required to exhaust his administrative remedies. Accordingly, plaintiff must show that his condition is an exigent circumstance such that pursuing his administrative remedies would jeopardize his life or seriously impair his health.
The question of what constitutes a serious medical condition for the purpose of the statute is an issue of first impression in the Commonwealth of Massachusetts. As such, an interpretation of the statute must be derived from other contexts. A relevant source for interpretation of a serious impairment for the purposes of G.L.c. 127, §38F is the federal interpretation of an Eighth Amendment serious medical condition.
The Eighth Amendment prohibits the “infliction of cruel and unusual punishments.” Chance v. Armstrong, 143 F.3d 698, 702 (2nd Cir. 1998). In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove “deliberate indifference to [his] serious medical needs.” Estelle v. Gamble, 97 S.Ct. 285, 291 (1976). To determine what constitutes a serious medical need, a court contemplates, “a condition of urgency” that may result in “degeneration” or “extreme pain.” Chance, 143 F.3d at 702, citing Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). In making such a determination, courts consider (1) the existence of an injury that a reasonable doctor would find worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual’s daily activities, or (3) the existence of chronic and substantial pain. Chance, 143 F.3d at 702.
Another significant factor in determining the seriousness of an inmate’s medical need is the effect of the denial of treatment. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). The Second Circuit reasoned that a serious medical condition exists where “the failure to treat a prisoner’s condition could result in further significant injury or the unnecessary and wanton infliction of pain.” Harrison v. Barkley, 219 F.3d 132, 136 (2nd Cir. 2000).
Neither Massachusetts nor the First Circuit has opined on whether a dental condition can constitute a serious medical condition. However, other jurisdictions have addressed this question. For example, the Second Circuit in Chance found that the plaintiffs overbite and cavity which caused great pain and made speaking and chewing difficult was a serious medical condition. 143 F.3d at 700, 703. In Harrison, 219 F.3d at 136, the Second Circuit reasoned that a cavity, if left untreated indefinitely, can constitute a serious medical condition. See also Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995) (serious medical condition caused by teeth deterioration); Hunt v. Dental Dep’t, 865 F.2d 198, 200 (9th Cir. 1989) (serious medical need when plaintiff cannot engage in a normal activityeating); Fields v. Gander, 734 F.2d 1313, 1314-15 (8th Cir. 1984) (serious medical condition due to infected tooth); Williamson v. Brewington-Carr, 173 F.Sup.2d 235, 238-39 (D.Del. 2001) (abscessed tooth, recurring gum infections, and loss of two teeth constituted a serious medical need); Dean v. Coughlin, 623 F.Sup. 392, 404 (S.D.N.Y.), vacated on other grounds, 804 F.2d 207 (2d Cir. 1986) (dental needs for fillings, crowns and the like are serious medical needs).
In each of the above cases, however, the asserted serious condition contained an element of delay in treatment. For example, in Chance, the plaintiff alleged that the dentist failed to timely remove his decayed tooth. 143 F.3d 701. See also Williamson, 173 F.3d at 237 (plaintiff alleged that the dentist failed to timely remove his decayed tooth); Boyd, 47 F.3d at 969 (three-week delay in treatment contributed to a finding of a serious medical condition). Fields, 734 F.3d at 315 (three-week delay in treatment contributed to a finding of a serious medical condition).
When an element of delay does not exist, a court may find that a dental condition is not serious. For example, in Channer v. Wezner, 1999 WL 49396 (Conn. Super Ct. Jan. 21, 1999), there was no allegation of a delay in treatment. The pro se plaintiff inmate, suffering from periodontal disease, asserted that he *62 was entitled to treatment superior to that offered by the defendant. After a visit to the oral surgeon, the oral surgeon recommended that the plaintiff consent to the extraction of the remaining abscessed teeth and allow a partial denture to be fabricated. The plaintiff refused, stating that the.defendant was obligated to provide a "more appropriate” manner of treatment. The court held that the plaintiffs gum disease did not constitute a serious medical condition. Id.
In the instant case, plaintiff alleges that the defendant failed to provide him with his preferred dental treatment. However, the record is devoid of any evidence that the defendant delayed treating plaintiff. In fact, the record shows that plaintiff was provided with dental treatment and any delay was caused by plaintiff, who failed to appear for scheduled appointments on several occasions. As such, this case is similar to Channer where the court, in the absence of a delay in treatment, found the plaintiffs gum disease to be non-serious. 1999 WL 49396. As no purposeful delay by the DOC is evident in the instant case, this court finds that plaintiffs condition is not a serious medical condition such that he was unable to first file a grievance. Accordingly, plaintiff has not established a likelihood of succeeding on the merits because he has not exhausted his administrative remedies pursuant to G.L.c. 127, §38F.
Again, assuming arguendo that plaintiff could show a serious medical condition, he cannot show a likelihood of succeeding on his Article 26 claim. As noted above, plaintiffs Article 26 claim would be analyzed under Eighth Amendment principles. Michaud, 390 Mass. at 534. Hence, plaintiff must show that the defendant acted with “deliberate indifference to his serious medical needs.” Estelle, 97 S.Ct. at 291.
The first requirement is the existence of a serious medical need. Harrison, 219 F.3d at 136. As indicated in the court’s analysis of G.L.c. 231, §38F, plaintiffs own delay in seeking treatment makes a finding that plaintiff suffered from a serious medical condition unlikely. Channer, 1999 WL 49396.
Even if plaintiff could prove that a serious medical condition existed, he likely will not be able to overcome the second element of an Eighth Amendment claim, a showing of deliberate indifference. Harrison, 219 F.3d at 137. “Deliberate Indifference will exist when an official knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.” Id. However, mere disagreement over the proper treatment does not create a claim if the treatment given is adequate. In certain instances, a physician may be deliberately indifferent if he or she chooses an easier or less efficacious treatment plan. Id.
Hence, courts find deliberate indifference when prison doctors intentionally deny or delay access to medical care. Estelle, 97 S.Ct. at 291 (emphasis added). See also Watson v. Caton, 984 F.2d 5376, 540 (1st Cir. 1993) (the inmate must show the purpose of denial of treatment was to punish the inmate or the result of “wanton” decisions to deny or delay treatment). Specific examples of deliberate indifference cited in Estelle would be injecting penicillin into a known allergenic, refusing to provide treatment, or delaying care to inflict pain on an inmate. Id. at 291 n. 10.
In the instant case, the court finds that the defendants did not knowingly disregard the plaintiffs injury. Estelle, 97 S.Ct. at 291. Rather, the record indicates that it was plaintiff who failed to appear for scheduled appointments on several occasions. When plaintiffs gum disease had seriously advanced, the defendants offered to treat the condition by removing the infected teeth and constructing dentures. Given that the DOC provided plaintiff with an adequate, although not preferred, treatment plan, the DOC’s refusal to authorize a gingivectomy or x-rays to determine if a gingivectomy is warranted does not constitute an Eighth Amendment violation. Chance, 143 F.3d at 702. Accordingly, plaintiff has not established a likelihood of succeeding on the merits of his Article 26 claim.[4]
II. Irreparable Harm and Balancing of Hardships for the Parties
In assessing whether a preliminary injunction should issue, a court must also consider whether the failure to issue an injunction would subject the party to irreparable harm. Ashford v. MBTA, 421 Mass. 563, 564 n.3 (1995); Planned Parenthood League of Mass., Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). If a court determines that the moving party will suffer irreparable harm, the judge must balance this risk against any similar risk of irreparable harm that the opposing party may suffer. Id.
Even if plaintiff could prove that the removal of his teeth constitutes irreparable harm, such an effect would be offset when balanced with harm to the DOC. By allowing plaintiffs request, the court would be setting a precedent that the DOC guidelines can be bypassed. Specifically, the court would be bypassing 103 DOC 630.12 requiring that a contractual physician’s referral precedes consultation services. A likely result of allowing the injunction is that other prisoners will contest their medical treatment and demand to be treated by an outside medical provider. Prison officials are afforded great deference in order to maintain institutional order and discipline. Bell v. Wolfish, 99 S.Ct. 1861, 1879 (1979). This deference has been extended to the medical treatment offered by prison officials. Layne v. Vinzant, 657 F.2d 468, 474 (1981).[5]
ORDER
For the foregoing reasons, it is ORDERED that plaintiffs motion for a preliminary injunction be and hereby is DENIED.

Plaintiff argues in his emergency motion that, at the very least, x-rays should be taken to determine if a gingevectomy is feasible. The extent of treatment and plaintiffs personal payment for the treatment, which would result in the disparate treatment of inmates, are not relevant to the issue of whether the plaintiff is entitled to specific medical treatment under law.

G.L.c. 127, §38F provides that:
An inmate shall not file any claim that may be the subject of a grievance under Section 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E; but the court may consider such claim if a final administrative resolution of a grievance filed pursuant to said section 38E has not been decided within 180 days from the date of filing such a grievance, or if the inmate can demonstrate to the court that exigent circumstances exist which, if delayed pursuant to the requirements of this section, would jeopardize the life or seriously impair the health of the inmate, or, for actions seeking equitable relief.

Defendant also asserted sovereign immunity as a defense to plaintiffs claim against the DOC. Plaintiff, in turn, moved to substitute Commissioner Maloney for the DOC as the defendant In this matter. Given this court’s findings that plaintiff has not show a likelihood of succeeding on the merits, defendant’s sovereign immunity defense need not be addressed.

The court acknowledges plaintiffs analogy of his condition to that of a diabetic faced with the prospect of foot amputation. It is a matter of degree. Many inmates undoubtedly suffer maladies which cause them pain and which adversely affect the quality of their lives. However, given the plaintiffs history of inattention to his own dental care dating back to 1995, in the absence of a clear showing of an Eighth Amendment or Article 26 violation, the court will not infringe on the discretion afforded to prison officials.